IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ANDREW GUZZETTI, as Seller Representative of Vidsoft Inc., ) ) ) ) Plaintiff, ) ) v. ) ) CITRIX ONLINE HOLDINGS GmbH, ) ) Defendant. ) ) | Civil Action No. 12-01152 GMS |

## MEMORANDUM

### I. INTRODUCTION

On September 18, 2012, the defendant, Citrix Online Holdings GmbH ("Citrix"), removed this action from the Delaware Court of Chancery based on diversity of citizenship and pursuant to 28 U.S.C. § 1441 *et seq.*[1] (D.I. 1.) The plaintiff, Andrew Guzzetti ("Guzzetti"), previously had filed suit in the Court of Chancery seeking a declaratory judgment that Citrix was not entitled to indemnification under the Stock Purchase Agreement (the "SPA") between the parties and alleging breach of the SPA. (D.I. 1, Ex. B.)

Presently before the court is Citrix's motion to transfer this case to the District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404. (D.I. 7.) For the reasons that follow, the court will deny this motion.

### II. BACKGROUND

On November 20, 2009, Citrix and Vidsoft Inc. ("Vidsoft") entered into the SPA, under

---

[1] The Court of Chancery case was *Guzzetti v. Citrix Online Holdings GmbH*, No. 7805-VCP.

which Citrix purchased all the stock of Vidsoft GmbH, a German limited liability company. (D.I. 7 at 2.) The SPA designated Guzzetti as "Seller Representative" for Vidsoft. (*Id.*) The agreement also contained a representation by Vidsoft that "'[t]he operation and conduct of the business of the Company [Vidsoft GmbH] . . . and the use of the Company Intellectual Property and the Company Products' did not and would not infringe any other person's patents or other intellectual property rights." (D.I. 1, Ex. B at Ex A § 2.14(d).) Vidsoft agreed to indemnify Citrix and other defined "Indemnified Parties" should this representation prove false and result in any losses. (D.I. 7 at 2.)

The SPA also contained at least two relevant forum selection provisions. Section 9.8(b) of the agreement provided:

> Unless otherwise explicitly provided in this Agreement, any action, claim, suit or proceeding relating to this Agreement or the enforcement of any provision of this Agreement shall be brought or otherwise commenced only in any state or federal court located in the County of New Castle, Delaware. Each party hereto . . . agrees not to assert . . . in any such proceeding commenced in any such court, . . . that such proceeding has been brought in an inconvenient forum . . . .

(D.I. 1, Ex. B at Ex. A § 9.8(b).) Section 9.8(c) then stated:

> [I]f any claim, action, suit or proceeding is commenced against any Indemnified Party by any Person in or before any court or other tribunal anywhere in the world, then such Indemnified Party may proceed against the Participating Payees, the Seller and the Seller Representatives in or before such court or other tribunal with respect to any indemnification claim or other claim arising directly or indirectly from or relating directly or indirectly to such claim, action, suit or proceeding or any of the matters alleged therein or any of the circumstances giving rise thereto.

(*Id.* at Ex. A § 9.8(c).)

On or about November 17, 2011, Pragmatus AV, LLC ("Pragmatus") filed a patent infringement suit against Citrix Systems, Inc. ("Citrix Systems") in the U.S. District Court for

2

the Southern District of Florida claiming infringement of four patents relating to desktop video conferencing. (*Id.* at 3–4.) Citrix Systems is the parent corporation of Citrix, and both parties acknowledge that it constitutes an "Indemnified Party" under the SPA's indemnification provision. (D.I. 7 at 4; D.I. 9 at 12.)

On December 30, 2011, Citrix informed Guzzetti that it was entitled to indemnification in connection with the Pragmatus infringement suit. (D.I. 7 at 4.) Guzzetti, however, disputed that the technology purchased by Citrix was the same as that at issue in the infringement litigation, and thus took the position that no indemnification was due. (*Id.*) On August 24, 2012, Guzzetti filed a complaint in the Court of Chancery seeking a declaratory judgment that no indemnification was owed and alleging that Citrix breached the SPA by, inter alia, failing to allow the release of a portion of the sale money kept in escrow to pay indemnification claims. (*Id.*; D.I. 1, Ex. B at ¶¶ 32–41.) As noted above, Citrix removed this action on September 18, 2012.

Soon thereafter, on September 21, 2012, Citrix and Pragmatus entered into a settlement agreement, ending the patent infringement suit. (D.I. 7 at 4–5.) Citrix continued to demand indemnification, and, on October 15, 2012, Citrix and Citrix Systems filed a separate action in the Southern District of Florida claiming that Guzzetti breached the SPA by refusing to provide indemnification in connection with the Pragmatus case. (*Id.* at 5.) Citrix now seeks to transfer this case to the Southern District of Florida, where the separate action remains pending.

## III. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or

3

to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404 provides "district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

In deciding whether to transfer an action under § 1404, the court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience. *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 20, 2012). The defendant must carry its burden of demonstrating that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879–80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *see also Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5865742, at *3 (D. Del. Nov. 16, 2012).

## IV. DISCUSSION

The court begins by considering whether this action could have been brought originally in the Southern District of Florida and then turns to the question of whether transfer would best serve the interests of convenience and justice.

### A. Propriety of Proposed Transferee Venue

Section 1404(a) permits the court to transfer an action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, the court may not transfer this action to the Southern District of Florida unless it determines that venue would have been proper there and that the Florida court could have exercised personal and subject matter jurisdiction. 17

4

James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

The court has little trouble concluding that the Southern District of Florida would have constituted a proper venue under 28 U.S.C. § 1391(b) and that subject matter jurisdiction would have existed pursuant to 28 U.S.C. §§ 1332(a). It is less clear, however, that the Florida court could have exercised personal jurisdiction over Citrix, a Switzerland corporation, at the time of filing.[2] Though it is Citrix's burden to demonstrate that transfer is proper, it offers the court nothing to suggest that personal jurisdiction would have existed. While this alone might be fatal to Citrix's motion, the court need not resolve the open jurisdiction question—a convenience analysis under the second prong of the transfer inquiry demonstrates that, regardless of the court's conclusion, transfer is inappropriate in this case.

B.  *Jumara* Analysis

The second step of the § 1404(a) transfer inquiry invites the court to determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Mitek Sys., Inc.*, 2012 WL 3777423, at *4 (internal quotation omitted). Rather than apply an inflexible formula, the Third Circuit has broadly

---

[2] It does not matter that Citrix might have waived any personal jurisdiction defense had Guzzetti filed this action in Florida. The Supreme Court has noted that, in determining whether an action "might have been brought" in a proposed transferee venue, a district court must look to the state of the world at the time of filing rather than relying on hindsight knowledge of the defendant's forum preference. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Court stated, "[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." 363 U.S. at 343–44.

Of course, the 2011 amendment to § 1404(a) added that a district court may also transfer an action "to any district or division to which all parties have consented," thereby abrogating in part the *Hoffman* decision—no longer is personal jurisdiction over the defendant required where all parties consent to the transferee forum. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. This, however, is not a case in which all parties have consented. Guzzetti opposes this motion, and, as such, the court may only transfer the case if it could have been brought originally in Florida. Because Citrix's consent plays no role in this particular type of transfer decision, the court believes the logic of *Hoffman* continues to apply and that the personal jurisdiction requirement cannot be satisfied by a hypothetical waiver.

5

instructed courts to consider the various private and public interests protected by § 1404. 55 F.3d at 879. Those private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court will address each of the disputed *Jumara* factors in turn.

    a.    Private interest factors

        i.    Plaintiff's forum preference

Perhaps the most significant factor in the transfer analysis is the plaintiff's choice of forum; the court generally accords this preference substantial weight. *See, e.g., Shutte*, 431 F.2d at 25; *Smart Audio Techs.*, 2012 WL 5865742, at *6; *Mimm v. Vanguard Dealer Servs., LLC*, No. 11-736-GMS, 2012 WL 4963315, at *6 (D. Del. Oct. 16, 2012). The court has long recognized, however, that this choice is not dispositive and that it may be entitled to less deference in certain situations. *Smart Audio Techs.*, 2012 WL 5865742, at *6. Citrix argues that Guzzetti's forum preference should be given less weight here for several reasons: (1) under the SPA, Citrix was permitted to file suit in Florida, (2) Delaware is not Guzzetti's home forum, and (3) the central facts of this suit occurred outside of Delaware. (D.I. 10 at 4.)

The court will first consider the impact of the SPA's two forum selection clauses and Citrix's entitlement to sue in Florida. Again, § 9.8(b) of the SPA states, "Unless otherwise explicitly provided in this Agreement, any action . . . shall be brought . . . only in any state or federal court located in the County of New Castle, Delaware." (D.I. 1, Ex. B at Ex. A § 9.8(b).) Section 9.8(c) then provides:

> [I]f any claim, action, suit or proceeding is commenced against any Indemnified Party by any Person in or before any court or other tribunal anywhere in the world, then such Indemnified Party may proceed against the Participating Payees, the Seller and the Seller Representatives in or before such court or other tribunal with respect to any indemnification claim or other claim arising directly or indirectly from or relating directly or indirectly to such claim, action, suit or proceeding or any of the matters alleged therein or any of the circumstances giving rise thereto.

(*Id.* at Ex. A § 9.8(c).) Though both parties seem to recognize that § 9.8(b) is a mandatory, general forum selection clause, they dispute the effect of § 9.8(c). Citrix contends that the Pragmatus litigation represents a "claim, action, suit or proceeding . . . commenced against any Indemnified Party by any Person in or before any court or tribunal," which triggered the specific application of § 9.8(c) and entitled it to file suit in Florida. (D.I. 7 at 5–6.). In its view, § 9.8(b) has no role to play in this case, as that section is only operative where a forum is not "otherwise explicitly provided in [the SPA]." (*Id.*) Citrix views § 9.8(c) as requiring that any indemnification suit proceed before the District Court for the Southern District of Florida, the same court that heard the Pragmatus case. (*Id.* at 6.)

Guzzetti argues that § 9.8(c) does not, in fact, apply to this case. (D.I. 9 at 8–9.) He contends that this provision is a permissive forum selection clause of limited scope—while it permits an Indemnified Party to bring an indemnification suit in the court where the underlying

7

case was heard, it does not require that the Indemnified Party select such a forum nor does it even allow the indemnitor that choice. (*Id.*) Guzzetti contends that the plain language of § 9.8(c) did not give him the right to file suit in the Southern District of Florida, and, as such, § 9.8(b)'s general forum selection clause controlled and required that he litigate in Delaware. (*Id.*)

The court believes that Guzzetti takes the better view of this issue. Though § 9.8(c) speaks of where an Indemnified Party may sue, it is silent as to the rights of an indemnitor, like Guzzetti. While this case may involve the type of indemnification rights addressed by § 9.8(c), the court does not lose sight of the fact that it was filed not by the indemnitee, Citrix—as was contemplated in § 9.8(c)—but by the indemnitor, Guzzetti. In the absence of any instruction from § 9.8(c), no other forum was "otherwise explicitly provided" for by the SPA, and Guzzetti was obligated to bring suit in Delaware consistent with the general rule of § 9.8(b). Contrary to Citrix's assertion, Guzzetti was either neither bound nor even permitted to sue in the Southern District of Florida.

Of course, the very fact that the SPA did permit the mirror-image of this suit to be filed in Florida may suggest that Guzzetti's forum preference for Delaware deserves less than maximum weight.[3] The court naturally gives less credit to an argument that a particular forum is inconvenient when the complaining party would have been contractually obligated to litigate in that jurisdiction had his opponent simply filed suit earlier. The *Jumara* court made clear that "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880. While a permissive, limited forum selection clause like that

---

[3] The court uses the "mirror-image" term informally here, as it recognizes that the Florida action involves an additional party, Citrix Systems, not joined in this case.

8

found in § 9.8(c) has a lesser effect on the court's analysis, it nevertheless suggests Guzzetti's amenability to litigation in Florida and somewhat reduces the weight given his own forum preference.[4] *See Mimm*, 2012 WL 4963315, at *6.

Citrix also argues that the significance of Guzzetti's forum choice is reduced "where the central facts of the lawsuit occur outside the chosen forum." (D.I. 10 at 4.) Of course, the fact that the events underlying a lawsuit occurred elsewhere may affect the court's analysis—it suggests the absence of "rational and legitimate reasons" for bringing suit in Delaware, an important consideration in the assessment of this factor. *See Intellectual Ventures I, LLC v. Altera Corp.*, 842 F.Supp.2d 744, 750–51 (D.Del.2012) (holding that the plaintiff's "legitimate and rational reasons for suing in Delaware" entitled that choice, at a minimum, to "significant deference"). In this case, however, Guzzetti clearly had a rational basis for suing in Delaware regardless of where the central facts of the case occurred. As the court notes above, the SPA *required* that he bring his claim in this state. Accordingly, the court believes that decision is entitled to at least "significant deference" within the *Jumara* analysis.[5]

Finally Citrix argues that Guzzetti's forum choice is entitled to reduced weight because

---

[4] While Guzzetti seems to fight this conclusion by arguing that he would have contested personal jurisdiction if Citrix had, in fact, filed suit first in Florida, the court believes the permissive forum selection clause of § 9.8(c) at least indicates that Guzzetti contemplated litigating the mirror-image of this case in that district.

[5] Citrix relies on a decision from the District of New Jersey for the proposition that a plaintiff's forum choice is entitled to less weight "where the central facts of the lawsuit occur outside the chosen forum." *Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*, No. 10-6457-ES, 2011 WL 3329087, at *2–3 (D.N.J. Aug. 2, 2011). As discussed above, the court views this merely as another means of stating the familiar principle that the presence or absence of rational and legitimate reasons for choosing a forum affects the weight given to that factor. To the extent that this "central facts" inquiry is actually viewed independently in New Jersey, the court notes that the cited decision does not represent controlling authority. Moreover, the court believes the "central facts" consideration is already adequately addressed through several other *Jumara* factors. *See* 55 F.3d at 879 ("The private interests have included . . . whether the claim arose elsewhere, . . . the convenience of the parties as indicated by their relative physical and financial condition, . . . and the location of books and records . . . The public interests have included . . . the local interest in deciding local controversies at home . . . .").

he has chosen to litigate outside his home forum of New York. Indeed, this court has recognized that, when a plaintiff choose to bring suit away from his home turf, it is generally inappropriate to accord that decision paramount deference. *See, e.g., Smart Audio Techs.*, 2012 WL 5865742, at *6; *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*, No. 06–187–GMS, 2006 WL 3783477, at *2 (D. Del. Dec.21, 2006). Guzzetti does not dispute this point, and the court therefore declines to grant his forum choice maximum weight.

In sum, the court weighs Guzzetti's Delaware forum preference heavily in this case. Section 9.8(b) of the SPA required him to sue in this state, and the Third Circuit has made clear that "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880. Just as the parties' agreement "is entitled to substantial consideration," a plaintiff's forum choice in conformity with that agreement should be respected. *See id.* Additionally, the forum selection clause provides a rational and legitimate basis for Guzzetti's decision to sue in Delaware, entitling that choice, at a minimum, to "significant deference." *Intellectual Ventures I*, 842 F.Supp.2d at 750–51. Guzzetti's preference, however, does not merit maximum weight, as he has sued outside his home forum and because the permissive selection clause of § 9.8(c) suggests his general amenability to suit in Florida.

ii. Defendant's forum preference

The court next considers the weight to be accorded the defendant's forum preference. *Jumara*, 55 F.3d at 879. Citrix seeks transfer to the Southern District of Florida, where it has commenced a later-filed action relating to the same subject matter as this suit. This factor weighs in favor of transfer, albeit very slightly given the forum selection clause of § 9.8(b),

10

which reflects Citrix's own willingness to litigate in Delaware.

### iii. Where the claim arose

*Jumara* next instructs courts to consider "whether the claim arose elsewhere." *Id.* Guzzetti raises two claims in this suit: a breach of contract claim for alleged violations of the SPA and a declaratory judgment claim regarding indemnification rights under the SPA. (D.I. 1, Ex. B at ¶¶ 32–41.) Both require the court to interpret the SPA, an agreement that, by its own terms, "shall be construed in accordance with, and governed in all respects by, the Laws of the State of Delaware." (D.I. 1, Ex B. at Ex. A § 9.8(a).) Guzzetti contends that this contract action should be viewed as arising in Delaware, the state of the SPA's governing law, and the court agrees.[6] This factor weighs against transfer.

### iv. Convenience of the parties

The fourth private interest factor is the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. In assessing this factor, the court accounts for "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek Sys., Inc.*, 2012 WL 3777423, at *6 (quoting *Fuisz Pharma*, 2012 WL 1820642, at *12).

Guzzetti, a resident of New York, argues that this factor counsels against transfer, as Citrix "has far stronger financial ability to incur travel expenses." The court, however, cannot determine that Citrix's financial resources actually exceed those of Guzzetti. While Guzzetti

---

[6] Citrix offers no argument regarding this factor.

11

points out that Citrix Systems "reported annual sales in 2011 of more than $2.2 billion and profits in 2011 of $356 million," Citrix Systems is not a party in this action. (D.I. 9 at 10.) The relevant questions are whether *Citrix* would face additional difficulty if forced to litigate in Delaware and whether it would be better able to bear those costs than Guzzetti. It may be reasonable to presume that Citrix has access to greater financial resources than Guzzetti, but the court will not rest its decision here upon such a presumption.

Similarly, the court believes that consideration of the parties' physical locations likely cuts in Guzzetti's favor, but it is unable to base its decision on that presumption. While transferring this action from Delaware to Florida would require Guzzetti to travel much farther to litigate, any additional travel time for Citrix, a Swiss company, is likely to be relatively insignificant. This conclusion, however, rests upon an assumption that Citrix and its employees are actually based in Switzerland, and that fact is not entirely clear. While the Complaint indicates that Citrix is a Swiss company, neither party identifies its principal place of business.[7] Accordingly, the court cannot properly assess the comparative burdens that would be imposed upon the two parties depending on the court's transfer decision. This factor will be treated as neutral.

v. Convenience of the witnesses

The court next considers "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. The court only grants this factor weight when there is reason to believe that a potential witnesses will decline to appear in one forum absent a subpoena. *See Smart Audio Techs.*, 2012 WL

---

[7] Guzzetti references a Citrix office in Massachusetts, (D.I. 9 at 11 n.7), and Citrix indicates that at least Citrix Systems is based in Florida (D.I. 10 at 5).

5865742, at *8; *AIP Acquisition LLC v. iBasis, Inc.*, 12-616-GMS, 2012 WL 5199118, at *5 n.6 (D. Del. Oct. 19, 2012); *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008).

Though Citrix represents that "[w]itnesses . . . are likely to be located in the Southern District of Florida," it neither identifies any of these potential witnesses nor suggests that they would refuse to testify in Delaware. (D.I. 7 at 7.) Guzzetti claims that, to the extent any witnesses are actually needed, they will probably include the Massachusetts attorneys who negotiated the SPA. (D.I. 9 at 11.) These lawyers, however, likely reside outside the subpoena power of both this court and the District Court for the Southern District of Florida, and Guzzetti fails to explain why they would agree to appear here but decline to testify in Florida. (*Id.*) Accordingly, the court finds that this factor is neutral.

vi.  Location of books and records

The final private interest factor is "the location of books and records" that might prove relevant to this action. *Jumara*, 55 F.3d at 879. Here, Citrix argues that records of the Pragmatus litigation and related mediation are likely to be found in Florida. (D.I. 10 at 5.) Though the court accords this particular *Jumara* consideration little weight given the ease with which documents can be electronically stored and transferred today, this factor does favor transfer in this case. *See Mitek Sys., Inc.*, 2012 WL 3777423, at *6.

b. Public interest factors

The parties next dispute the public interest factor relating to "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 880. Guzzetti argues that this factor weighs against transfer because this is essentially a contract action that will

13

require interpretation of the SPA, an agreement governed by Delaware law. (D.I. 9 at 11.) According to Guzzetti, "[t]his court is more experienced with Delaware contract and indemnification law than a Florida-based judge." (*Id.*) Citrix acknowledges that this court is more familiar with Delaware contract law, but contends that the provisions at issue are relatively straightforward and that the true controversy is actually whether the allegations in the Pragmatus litigation reached the Vidsoft technology and whether that technology infringed Pragmatus' patents. (D.I. 10 at 6.)

The court believes that Guzzetti has the better argument. Any determination about the underlying Pragmatus litigation will ultimately need to be filtered through the SPA, requiring the court to perform some measure of contract interpretation. Though that interpretative work may be minimal, it will necessarily occur at some point, and this court is likely better suited to the task. Moreover, even were the court to accept Citrix's position that the actual dispute centers on Pragmatus' infringement claims, there is no reason to believe that the Southern District of Florida would be better able to resolve those questions.[8] Patent law is federal law, and this court is equally equipped to assess the underlying infringement action. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." (internal quotation marks omitted)); *Mitek Sys., Inc.*, 2012 WL 3777423, at *8. Accordingly, this factor weighs slightly against transfer.

Finally, the court omits the remaining public interest factors from its *Jumara* analysis, as

---

[8] Indeed, Citrix claims only that "[t]he Southern District of Florida, where the Pragmatus Litigation was filed, is *at least as well suited* as the Delaware courts to determine these issues." (D.I. 10 at 6 (emphasis added).) No argument is made that a Florida-based judge would have an advantage in analyzing the Pragmatus infringement claims.

14

neither party has placed them in dispute and none appear applicable to this motion.

C. Transfer Analysis Summary

The court finds that two private interest factors weigh in favor of transfer: (1) Citrix's forum preference, which is entitled to only minimal weight, and (2) the location of relevant books and records, which likewise has little significance given modern technology. These are more than offset by the *Jumara* factors counseling against transfer: (1) Guzzetti's own forum choice, which receives heightened deference, (2) the location of the claim, and (3) the court's familiarity with the applicable law, which is weighted only slightly here. The court has little difficulty concluding that Citrix has failed to meet its heavy burden of demonstrating that the interests of convenience and justice strongly favor transfer.

V. **CONCLUSION**

For the above reasons, the court will deny Citrix's motion to transfer to the Southern District to Florida pursuant to 28 U.S.C. § 1404(a).

Dated: January 3, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANDREW GUZZETTI, as Seller )
Representative of Vidsoft Inc., )
)
Plaintiff, )
)
v. ) Civil Action No. 12-01152 GMS
)
CITRIX ONLINE HOLDINGS GmbH, )
)
Defendant. )

## ORDER

At Wilmington this 3 day of January 2013, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

The defendant's Motion to Transfer (D.I. 7) be DENIED.

CHIEF, UNITED STATES DISTRICT JUDGE